JAY SMITH (CA Bar No. 166105)
JOSHUA ADAMS (CA Bar No. 261658)
**GILBERT & SACKMAN**
**A LAW CORPORATION**
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000
Fax: (323) 937-9139
Email: js@gslaw.org
jadams@gslaw.org

ANTONIA DOMINGO, Assistant General Counsel (*pro hac vice*)
**UNITED STEELWORKERS**
60 Boulevard of the Allies, 8th Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 562-2284
Fax: (412) 562-2574
Email: adomingo@usw.org

Attorneys for Plaintiff *United Steelworkers*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC,<br><br>Plaintiff,<br><br>v.<br><br>VISTA METALS CORPORATION,<br><br>Defendant. | Case No.: **5:19-cv-1781 CAS (SHK)**<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Hrg. Date: **March 30, 2020**<br>Hrg. Time: **10 a.m.**<br>Courtroom: **8D**<br>Court: **350 West First Street Los Angeles, CA 90012** |

**TABLE OF CONTENTS**

I.  INTRODUCTION ...........................................................................................1

II. STATEMENT OF FACTS ............................................................................1

   A.  The CBA and the Contractual Grievance Procedure before Arbitration .................1

   B.  The Union's Demand or Filing for Arbitration under the CBA ..............................3

III. RELEVANT CBA PROVISIONS .................................................................4

IV. LEGAL STANDARD ON MOTION TO COMPEL ARBITRATION UNDER A COLLECTIVE BARGAINING AGREEMENT ..................................6

V. ARGUMENT ..................................................................................................7

   A.  The Courts have consistently held that an arbitrator should decide procedural issues when the parties bargained to submit the substantive issue to arbitration.....7

   B.  The parties agreed to submit this dispute to arbitration. .........................................12

   C.  The Company cannot present the "most forceful evidence" necessary to exclude this claim from arbitration. ..................................................................13

VI. CONCLUSION ...............................................................................................16

# TABLE OF AUTHORITIES

**CASES**

*AT & T Techs., Inc. v. Commc'n Workers of America*,
    475 U.S. 643 (1986) ........................................................................................... 10

*Int'l Union of Operating Engineers v. Flair Builders*,
    406 U.S. 487 (1972) ........................................................................................... 10

*Int'l Union of Petroleum and Indus. Workers v. Western Indus. Maintenance, Inc.*,
    707 F.2d 425 (9th Cir. 1983) ............................................................................. 12

*Int'l Union of Painter & Allied Trades, Dist. 15, Local 159 v. J & R Flooring, Inc.*,
    656 F.3d 860 (9th Cir. 2011) ............................................................................... 6

*John Wiley & Sons, Inc. v. Livingston*,
    376 U.S. 543 (1964) ........................................................................ 6, 10, 13, 15

*Local Union No. 370 v. Morrison-Knudsen*,
    786 F.2d 1356 (9th Cir. 1986) ........................................................................... 11

*Pack Concrete v. Cunningham*,
    866 F.2d 283 (9th Cir. 1989) ............................................................................. 13

*Retail Delivery Drivers, Driver Salesmen, Produce Workers & Helpers Local 588 v. Servomation Corp.*,
    717 F.2d 475 (9th Cir. 1983) .............................................................. 10, 11, 13, 15

*Rochester Telephone Corp.*,
    340 F.2d 237 (2d Cir. 1965) .............................................................................. 11

*Service Employees Int'l Union v. St. Vincent Medical Center*,
    344 F.3d 977 (9th Cir. 2015) ............................................................................. 11

*United Food & Commercial Workers Union, Local 770 v. Geldin Meat Co.*,
    13 F.3d 1365 (9th Cir. 1994) ..................................................................... 6, 11, 14

*United Steelworkers of America v. American Mfg. Co.*,
    363 U.S. 564 (1960) ..................................................................................... passim

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960) ..................................................................................... passim

*United Steelworkers v. Enterprise Wheel & Car Corp.*,
    363 U.S. 593 (1960) ...................................................................................... 7, 10

# TABLE OF AUTHORITIES
## (Continued)

**STATUTES**

29 U.S.C. § 185 ................................................................................................... 6

29 U.S.C. § 185(a) .............................................................................................. 6

Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("Plaintiff" or "Union") files this Memorandum of Points & Authorities in support of its Motion to Compel Arbitration.

## I.  INTRODUCTION

The Union asks this Court to order Defendant Vista Metals Corporation ("Defendant" or "Company") to arbitrate Grievance # ST001 ("Grievance"). (Sandoval-Henderson Dec. ¶ 4, Ex. B.) The Grievance alleges that the Company violated the parties' collective-bargaining agreement ("CBA") by terminating grievant and Company employee Samuel Reyes ("Reyes") without cause. The parties indisputably agreed to arbitrate discipline allegedly issued without cause: the CBA prevents the Company from issuing discipline without just cause and also includes a broad arbitration clause that allows the Union, the Company, or an employee to grieve; and, if the Union so determines regarding its grievances, to submit to binding arbitration "any dispute" or "claimed violation" of the CBA. (Sandoval-Henderson Dec. ¶ 2, Ex. A ("CBA") at art. XVI, Section 1.) The Company has refused the Union's demand to arbitrate the Grievance, claiming that the Union untimely appealed it to arbitration. But under well-established Supreme Court and Ninth Circuit precedent, an arbitrator, not a court, determines such procedural issues.

Therefore, the Company cannot evade its bargained-for contractual obligations by raising a timeliness defense in this forum and, respectfully, this Court must grant Plaintiff's motion to compel arbitration of the Grievance under the CBA.

## II.  STATEMENT OF FACTS

### A.  The CBA and the Contractual Grievance Procedure before Arbitration

The Union represents production and maintenance employees at the Company's facility in Fontana, California. The Union and the Company are parties to the CBA, which is in effect from April 11, 2015 to April 10, 2020. (CBA, art. III ("Term of Agreement"), art. X ("Union Recognition and Representation").) The CBA establishes

the terms and conditions of employment for Union-represented employees at the Fontana facility. Two of the CBA's provisions are relevant here. First, the CBA prohibits the Company from disciplining, suspending, or discharging employees without cause. (CBA, art. VIII, Section 1 (". . . discipline, suspend and discharge [employees] for cause . . ."), art. XVIII, Section 1 ("The Company shall have the right to discharge and/or discipline any employee for just cause . . . .").) Second, the CBA allows an employee, the Union, or the Company to file a grievance over "any dispute of [sic] difference of opinion involving the meaning[,] application[,] or interpretation of a specific provision(s)" or "a claimed violation of a specific provision(s)" of the CBA. (CBA, art. XV, Section 1.) This broad language allows the Union to submit a grievance challenging the Company's decision to discipline, suspend, or discharge a bargaining-unit employee.

The CBA's grievance procedure includes three steps. (CBA, art. XV, Sections 1, 3.) If the Union files a grievance on behalf of a bargaining-unit employee, it must file that grievance directly at the second step. (CBA, art. XV, Section 3.) If the Union and the Company cannot resolve the grievance at the second step, the Union must reduce the issue to writing and move the grievance to the third step within five working days. (*Id.*) If the Union and the Company cannot resolve the grievance at the third step, the Union may appeal the grievance to arbitration before an impartial arbitrator. (*Id.*) The CBA provides that the "decision of the arbitrator will be final and binding on both parties." (CBA, XVI, Section 1).

The parties agreed to include the following time limits in the CBA for appealing a grievance to arbitration: "If [the grievance is] not settled within ten (10) working days, either party may elect to invoke arbitration as hereinafter provided." (*Id.*) The CBA then provides: "Any dispute or grievance not settled, pursuant to the Grievance Procedure, may be submitted to Arbitration upon request of either party within ten (10) working days after the written decision of the Company. Failure by either party to file within the ten (10) days prescribed herein, the grievance or dispute shall be considered dropped."

(*Id.*) The CBA further provides that "[a]ll of the time limits set forth under this Article may be extended only by mutual consent." (CBA, art. XVI, Section 3.)

### B. The Union's Demand or Filing for Arbitration under the CBA

The Union invoked the above grievance and arbitration procedure to challenge the Company's termination of bargaining-unit employee Reyes. On December 20, 2017, the Company terminated Reyes for alleged insubordination. Six days later, the Union "filed" the Grievance directly at the second step, arguing that the Company had violated Article VII (requiring just cause for discipline) of the CBA and requesting that the Company reinstate Reyes and make him whole. (Sandoval-Henderson Dec. ¶ 4, Ex. B.) In labor relations involving collective bargaining agreements and unions, the phrase "to grieve" generally is used interchangeably with the phrase "to file a grievance." (*Id.* ¶ 4.) This is similar in style to the interchangeability of the phrase "to demand arbitration" and "to file for arbitration." (*Id.* ¶ 7.)

The Company denied the Grievance at the second step, and the Union advanced the Grievance to the third step. (*Id.* ¶ 4.) The parties held a third-step meeting on January 9, 2018. (*Id.* ¶ 5.) Three days after the third-step meeting, the Company's Senior Human Resources Manager, Sandi Martinez, emailed a response to the Union's Staff Representative, Marlissa "Marly" Sandoval-Henderson ("Sandoval-Henderson"). (*Id.*). On January 17, 2018, five days after receiving the Company's settlement offer, Sandoval-Henderson emailed Martinez: "The Union does not concur with the settlement offer from the [C]ompany and moves this grievance to the next step in the grievance process, arbitration." (*Id.* ¶ 6, Ex. D.)

In July 2018, Sandoval-Henderson requested a panel of arbitrators from the Federal Mediation and Conciliation Service ("FMCS"). On July 16, 2018, FMCS sent a panel of labor arbitrators to the Union and to the Company. (*Id.* ¶ 9.) The Company's Director of Human Resources, Ron Dunn, emailed Sandoval-Henderson on March 21, 2019, acknowledging that the "Union invoked arbitration for Samuel Reyes on 1/17/18 which was timely." (*Id.* ¶ 10, Ex. F.) Dunn then argued, however, that the Union's

appeal to arbitration was untimely under Article XVI, Section 1 of the CBA. Sandoval-Henderson emailed Dunn a letter on July 29, 2019, explaining that the "Company should direct procedural questions, including alleged timeliness issues, to the arbitrator." (*Id.* ¶ 11, Ex. G.) Therefore, the "Union requests that the Company resume processing the Grievance immediately, including cooperating with the Union to schedule this Grievance for arbitration." (*Id.*) Dunn responded on August 26, 2019: "After reviewing your request with legal counsel, the [C]ompany maintains its position the [sic] filing for arbitration in regards to Samuel Reyes was not filed within the ten (10) days as stated in Article XVI, Section 1 of the Labor Agreement and failure by either party to file within the ten (10) days prescribed herein, the grievance or dispute shall be considered dropped." (*Id.* ¶ 12, Ex. H.) Sandoval-Henderson replied on September 3, 2019, explaining again that "the Company may raise the alleged timeliness issue as a defense in the arbitration proceeding, but cannot refuse to process a grievance based on this defense." (*Id.* ¶ 13, Ex. I.) Sandoval-Henderson reiterated the Union's request to strike arbitrators and proceed with arbitration. (*Id.*). Dunn responded on September 5, 2019, explicitly refusing to strike arbitrators. (*Id.* ¶ 14, Ex. J.) The Union then filed the instant action on September 17, 2019, asking this Court to compel the Company to arbitrate the Grievance.

## III.   RELEVANT CBA PROVISIONS

**Article XV – Grievance Procedure**

> <u>Section 1</u>.  A grievance is any dispute of difference of opinion involving the meaning[,] application or interpretation of a specific provision(s) of this Agreement or a claimed violation of a specific provision(s) of this Agreement.  A grievance may be raised by an employee, the Union, or the Company . . .
>
> . . .

**Article XVI – Arbitration**

<u>Section 1</u>. Any dispute or grievance not settled, pursuant to the Grievance Procedure, may be submitted to Arbitration upon request of either party within ten (10) working days after the written decision of the Company. Failure by either party to file within the ten (10) days prescribed herein, the grievance or dispute shall be considered dropped. Provided further that the arbitration shall be confined to the settlement of a dispute or grievance arising out of or having to do solely with the interpretation or application of the clauses of this Agreement and no arbitrator shall have authority or power to add to, or detract, or modify from the specific provisions of this Agreement. The decision of the arbitrator will be final and binding on both parties.

<u>Section 2</u>. The party requesting arbitration shall within seven (7) days attempt to mutually agree upon an arbitrator with the other party. Failure to select an arbitrator within three (3) additional days, the party requesting arbitration shall request of the Federal Mediation and Conciliation Service a panel of seven (7) arbitrators. The parties shall, as soon as mutually convenient, alternately cross off six (6) members of the panel and the remaining or seventh arbitrator shall be selected. The arbitration shall be held within sixty (60) days after the arbitrator has been selected. The award of the arbitrator shall be submitted by him no later than thirty (30) days following the close of arbitration.

. . .

**Article XVIII -- Discharge**

> <u>Section 1</u>.  The Company shall have the right to discharge and/or discipline any employee for just cause and/or violation of posted Company house and safety rules . . . .
>
> . . .

## IV. LEGAL STANDARD ON MOTION TO COMPEL ARBITRATION UNDER A COLLECTIVE BARGAINING AGREEMENT

Section 301 of the Labor Management Relations Act of 1947 authorizes federal suits to enforce collective bargaining obligations.  29 U.S.C. § 185; *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *Int'l Union of Painter & Allied Trades, Dist. 15, Local 159 v. J & R Flooring, Inc.*, 656 F.3d 860, 867 (9th Cir. 2011) ("Section 301 of the Labor Management Relations Act . . . creates a cause of action, enforceable in either state or federal court, for violation of collective bargaining contracts."); *United Food & Commercial Workers Union, Local 770 v. Geldin Meat Co.*, 13 F.3d 1365, 1366 (9th Cir. 1994) (stating that "the Union has a colorable claim . . . which may well be covered under the CBA," and reversing district court order which denied labor union's motion to compel arbitration, because the "District Court could not have reached its conclusions without interpreting substantive contract provisions").

Neither party disputes as a matter of fact the authenticity of the contract at issue here or that it was validly entered by both parties.  As such, the question of the scope of the arbitration duty is "a matter to be determined by the Court on the basis of the contract entered into by the parties." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964); *Int'l Union of Painter & Allied Trades, Dist. 15, Local 159 v. J & R Flooring, Inc.*, 656 F.3d 860, 867-68 (9th Cir. 2011) ("All that is required for jurisdiction to be proper under § 301(a) is that the suit be based on an alleged breach of contract between an employer and a labor organization and that the resolution of the lawsuit be focused upon and governed by the terms of the contract.") (internal citation

and quotation omitted).  A motion to compel arbitration should be granted unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf Navigation Co.*, 363 U.S. at 577.  There is a strong presumption in favor of arbitration of labor disputes. *Id.*

In ruling on a motion to compel arbitration of a collective bargaining agreement, a district court is "confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator." *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 568 (1960).

## V. ARGUMENT

### A. **<ins>The Courts have consistently held that an arbitrator should decide procedural issues when the parties bargained to submit the substantive issue to arbitration.</ins>**

In the seminal *Steelworkers Trilogy*,[1] the Supreme Court articulated broad principles governing labor arbitrations. The first two cases in the Trilogy are relevant here. First, in *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567 (1960), the Court recognized that a union agrees to a grievance clause as a "quid pro quo" for relinquishing the right to strike during the term of a collective-bargaining agreement. Therefore, "the agreement is to submit all grievances to arbitration, not merely those that a court may deem to be meritorious." *Id.* at 567. The Court continued:

> The function of the court is very limited when the parties have agreed to submit all of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which

---

[1] *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960).

on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

*The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim.* . . . The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware.

*Id.* at 567 (emphasis added).

The Court applied these principles and ordered the company to arbitrate the grievance:

The union claimed in this case that the company had violated a specific provision of the contract. The company took the position that it had not violated that clause. There was, therefore, a dispute between the parties as to 'the meaning, interpretation and application' of the collective bargaining agreement.

*Id.* at 569.

Second, in *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581 (1960), the Court recognized that the grievance and arbitration procedure "is at the very heart of the system of industrial self-government." The Court also recognized that arbitrators of labor disputes have a special role in this system. They apply their

knowledge of industrial practices and "the common law of the shop" when interpreting contracts. *Id.* at 580. Indeed, "[t]he labor arbitrator performs functions which are not normal to the courts; the considerations which help him fashion judgments may indeed be foreign to the competence of courts." *Id.* The Court acknowledged, however, that it cannot order a party to arbitrate a dispute that the party did not agree to submit to arbitration. *Id.* at 582. The Court resolved its role in determining arbitrability by narrowly defining the scope of the judicial analysis:

> [T]o be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under s. 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied ***unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute***. Doubts should be resolved in favor of coverage.

*Id.* at 582-83 (emphasis added).

The Court also addressed the evidence necessary for a party to convince a court that it had not agreed to submit a particular grievance to arbitration:

> In the absence of any express provision excluding a particular grievance from arbitration, ***we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail***, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad. Since any attempt by a court to infer such a purpose necessarily comprehends the merits, ***the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the***

***arbitration clause***, when the alternative is to utilize the services of an arbitrator.

*Id.* at 584-85 (emphasis added). *See also AT & T Techs., Inc. v. Commc'n Workers of America*, 475 U.S. 643, 650 (1986) ("where the contract contains an arbitration clause, there is a presumption of arbitrability").

After deciding the *Steelworkers Trilogy*, the Court specifically addressed whether courts or arbitrators should decide procedural arbitrability issues, like the timeliness of a union's appeal to arbitration. In *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1967), the employer argued that the union failed to comply with the first two steps of the grievance procedure and "since the duty to arbitrate arises only in Step 3, it has no duty to arbitrate this dispute." *Id.* at 556. The employer specifically argued that the court, rather than the arbitrator, should decide "the question whether 'procedural' conditions to arbitration have been met." *Id.* at 556. The Court rejected the employer's argument. The Court explained that "[q]uestions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it." *Id.* at 556-57. Therefore, the Court held that "[o]nce it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *Id.* at 557. *See also Int'l Union of Operating Engineers v. Flair Builders*, 406 U.S. 487, 488 (1972) (finding procedural question of whether union's demand to arbitrate was barred by the doctrine of laches when union waited five years to appeal grievance to arbitration was for arbitrator to decide).

The Ninth Circuit has applied these principles to cases in which the employer argued that it had no obligation to arbitrate because the union's request was untimely. In *Retail Delivery Drivers, Driver Salesmen, Produce Workers & Helpers Local 588 v. Servomation Corp.*, 717 F.2d 475 (9th Cir. 1983), a case directly on point, the contract

had a clause requiring the party desiring arbitration to notify the other party within 72 hours of a grievance committee's failure to resolve the dispute. If neither party sought arbitration within 72 hours, the contract provided that the grievance "is deemed to have been settled in favor of the [defending] party." *Id.* at 476. The union notified the employer that it was appealing a grievance to arbitration more than 72 hours after the grievance committee deadlocked in its attempt to resolve a grievance. The employer pointed to the contractual language and argued that the parties had not contracted to arbitrate untimely claims.

The Ninth Circuit acknowledged that "[t]here is some support for the proposition that a court may consider a strictly procedural question as to the timeliness of a demand for arbitration in those rare instances where no factual dispute exists and resolution of the issue would preclude all need for arbitration." *Id.* at 478 (internal citations omitted). But the court found that this was not one of those "rare instances." The court pointed out that an arbitrator could interpret the 72-hour time limit as beginning when the union received formal notice of the grievance committee's deadlock, even though neither party raised this argument. *Id.* at 478. The Ninth Circuit concluded that "[a]n arbitrator would be able to address those factual issues – which involve examining the usual practices of the parties – more readily than the courts." *Id.* (citing *Rochester Telephone Corp.*, 340 F.2d 237, 239 (2d Cir. 1965)). *See also Service Employees Int'l Union v. St. Vincent Medical Center*, 344 F.3d 977, 986 (9th Cir. 2015) (internal citations omitted) ("The issue whether the Union timely filed the alleged violations of the agreement is an issue left to the arbitrator, not this court."); *United Food and Commercial Workers Union, Local 770 v. Geldin Meat Co.*, 13 F.3d 1365 (9th Cir. 1994) (finding employer failed to meet burden of establishing with "positive assurance" that allegedly exclusionary language in the contract excluded the union's grievance from arbitration because it was susceptible to the interpretation advanced by the union); *Local Union No. 370 v. Morrison-Knudsen*, 786 F.2d 1356, 1358 (9th Cir. 1986) (internal citations omitted, emphasis added) ("Once a court determines that the parties agreed to arbitrate a dispute,

then that dispute *must* be submitted to the arbitrator. The Union filed a grievance over a legitimate question regarding the interpretation or application of the agreement. Having decided that the collective bargaining agreement is in existence and that it provides for the arbitration of that dispute, the district court was correct in its decision to leave all remaining issues, including any procedural defenses, to the arbitrator.").

Similarly, as described more fully below, here the Union will argue before the arbitrator that its grievance was timely, and to the degree Vista Metals raises a timeliness defense, this defense has been waived by Defendant's failure to raise the issue during the steps of the grievance process (*i.e.*, in response to the Union's initial demand for arbitration). These issues can only be, and must be, resolved by an arbitrator in the first instance. *Int'l Union of Petroleum and Indus. Workers v. Western Indus. Maintenance, Inc.*, 707 F.2d 425, 429 (9th Cir. 1983) (". . . federal labor policy favors arbitration. Therefore, in determining whether an arbitrator has exceeded his authority, the agreement must be broadly construed with all doubts resolved in favor of the arbitrator's authority.").

### B. The parties agreed to submit this dispute to arbitration.

In light of the above principles, this is a simple case. The parties agreed to a broad arbitration clause. The CBA defines a grievance as "any dispute of difference of opinion involving the meaning[,] application or interpretation of a specific provision(s) of this Agreement of a claimed violation of a specific provision(s) of this Agreement." (Ex. 1 at Art. XV, Section 1). The CBA allows either party to submit to arbitration "*any* dispute or grievance not settled." (*Id.* (emphasis added)). The CBA also prevents the Company from discharging or disciplining bargaining-unit employees without just cause. The Union filed a grievance, claiming that the Company terminated Reyes without the contractually required just cause. The Company argued that it had not violated the CBA. In other words, the parties had a dispute over "the meaning[,] application or interpretation" of a specific provision of the CBA, the management rights clause. Therefore, just like *American Mfg. Co.*, "[t]he union claimed in this case that the

company had violated a specific provision of the contract. The company took the position that it had not violated that clause. There was, therefore, a dispute between the parties as to 'the meaning, interpretation and application' of the collective bargaining agreement." *American Mfg. Co.*, 363 U.S. at 569. And just like *American Mfg. Co.*, the parties indisputably agreed to submit just cause disputes to arbitration. Under applicable precedent, the analysis stops here. Any procedural issues arising from the just-cause dispute "should be left to the arbitrator." *John Wiley*, 376 U.S. at 557; *see also Pack Concrete v. Cunningham*, 866 F.2d 283, 285 (9th Cir. 1989) (noting that, even "whether the subject matter of the dispute is arbitrable," and whether the issue is properly presented to an arbitrator or "mislabeled," is a "procedural question[] . . . to be left to the arbitrator").

### C. The Company cannot present the "most forceful evidence" necessary to exclude this claim from arbitration.

The grievance is arbitrable and therefore any procedural issues connected to the grievance are arbitrable as well. The Company will attempt to complicate the standard by arguing that the Union's alleged failure to meet the arbitration time limits means that this grievance is "dropped" under the contractual language and, therefore, the Union's claim is excluded from arbitration. This is the same argument the employers unsuccessfully advanced in *John Wiley*, *supra* and *Retail Delivery Drivers*, *supra*. Under this applicable precedent, the Company must present the "most forceful evidence" that this is one of those "rare instances where no factual dispute exists and resolution of the issue would preclude all need for arbitration" in order to avoid its legal obligation to arbitrate the Grievance. *Warrior & Gulf*, 363 U.S. at 585; *Retail Delivery Drivers*, 717 F.2d at 478.

This is not one of those rare cases. The Company is incorrectly interpreting the contractual language and, therefore, cannot point to the language as supplying the necessary "most forceful evidence" to exclude the Union's claim from arbitration. The Union did not untimely appeal the Grievance to arbitration. Article XV, Section 3 of the

CBA allows either party to "elect to invoke arbitration as hereinafter provided" if the grievance is "not settled within ten (10) working days." (Ex. 1). Article XVI, Section 1 of the CBA, to which Article XV, Section 3 directs the parties with the phrase "as hereinafter provided," defines the arbitration timelines more specifically: "Any dispute or grievance not settled, pursuant to the Grievance Procedure, may be submitted to Arbitration upon request of either party within ten (10) working days after the written decision of the Company. Failure by either party to file within the ten (10) working days prescribed herein, the grievance or dispute shall be considered dropped." (*Id.*). In its communication to the Union, the Company argued that the verb "file" in the second sentence of Article XV, Section 3 required the Union to both notify the Company of its intent to appeal the Grievance to arbitration *and* to request a panel of arbitrators from FMCS. (Ex. 6). The contractual language does not support this interpretation. The Company's decision to read an extra requirement into the contract does not constitute the "most forceful evidence" necessary to exclude the Union's claim from arbitration. *Warrior & Gulf*, 363 U.S at 589. The CBA's language is clearly "susceptible of an interpretation that covers the asserted dispute" and therefore the Company must arbitrate the Grievance. *Id.* at 589.

At worst, the Company may assert that the contractual time limits are ambiguous. But "[i]n a situation where the contract is susceptible to more than one interpretation, it is up to the arbitrator, not the District Court, to apply principles of contract law in interpreting the CBA." *Geldin*, 13 F.3d at 1369 (internal citation omitted). In *Geldin*, the Ninth Circuit overturned the district court's opinion accepting the employer's interpretation of the contractual arbitration clause and declining to order the employer to arbitrate a grievance. The Ninth Circuit held that "[w]e agree with the Union that the [arbitration clause] is readily susceptible to an interpretation that it was intended to cover [the] dispute . . . and thus falls squarely within the ambit contemplated by the Supreme Court in *Warrior & Gulf*.d Further inquiry would require us to delve into an area of contract interpretation which the Supreme Court has clearly mandated as the arbitrator's

realm." *Id.* at 1369. The same analysis applies here. Arguably the verb "file" in Article XV, Section 3 could require the party seeking arbitration to request a panel of arbitrators within 10 days. Or, as the Union maintains, it could simply mean that the party seeking arbitration "files" for arbitration in the sense that it moves the grievance to the next step in the grievance procedure by notifying the other party. This is a contractual interpretation question for an arbitrator to decide because "[q]uestions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it." *John Wiley*, 376 U.S. at 556-57. Here, the Union has presented evidence of that context. The parties have never interpreted the contractual language as requiring the party seeking arbitration to both notify the other of its intent to arbitrate and to request a panel of arbitrators within 10 days to satisfy any "filing" requirement. (Sandoval-Henderson Dec. ¶ 7.) This practice also makes sense and is consistent with how the Union prepares for arbitration. It allows the Union to timely appeal a grievance to arbitration while providing the parties time to attempt to settle the dispute short of an arbitration hearing. In addition, as described by Sandoval-Henderson in her declaration, it has been her long-standing practice to prepare for arbitration before requesting a panel from FMCS, because the arbitration "shall be held within sixty (60) days after the arbitrator has been selected." (CBA, art. XVI, Section 2; Sandoval-Henderson Dec. ¶ 7.) Thus the interpretation of the CBA advanced by Vista Metals likely would have deprived Sandoval-Henderson of adequate opportunity to prepare for arbitral trial.

In sum, an arbitrator, not the courts, must decide how to interpret the contractual time limits in light of the past practice of the parties. *Retail Delivery Drivers*, 717 F.2d at 478 (internal citations omitted) "([a]n arbitrator would be able to address those factual issues – which involve examining the usual practices of the parties – more readily than the courts").

## VI. CONCLUSION

The Company cannot evade its legal obligation to arbitrate the Grievance by claiming that the Union untimely appealed the Grievance to arbitration. The parties indisputably agreed to arbitrate the substance of the Grievance: whether the Company had cause to terminate Reyes. Under applicable precedent, the Company must arbitrate the Grievance unless it can provide "the most forceful evidence" that the parties intended to exclude it from arbitration. The Company's interpretation of arguably ambiguous contractual language does not constitute the necessary evidence. The parties bargained to submit the Grievance, including the Company's procedural defense, to an arbitrator to apply his or her specialized knowledge and to examine the parties' usual practices. All of the Company's arguments, including its claim of untimeliness, are for the arbitrator to decide. This Court should order the Company to arbitrate the Grievance and comply with its bargained-for obligations.

Dated: February 10, 2020

**GILBERT & SACKMAN, A Law Corporation**
Jay Smith
Joshua Adams

**UNITED STEELWORKERS**
Antonia Domingo, Assistant General Counsel
(*pro hac vice*)


By: /s/ Antonia Domingo
Attorneys for the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC